# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRIS RUFER<br>724 Main Street<br>Woodland, CA 95695;<br><br>LIBERTARIAN PARTY OF INDIANA<br>737 East 86th Street<br>Indianapolis, IN 46240; and<br><br>LIBERTARIAN NATIONAL<br>CONGRESSIONAL COMMITTEE INC.<br>2130 Posada Drive<br>Oxnard, CA 93030,<br><br>      *Plaintiffs*,<br><br>   v.<br><br>FEDERAL ELECTION COMMISSION<br>999 E Street, N.W.<br>Washington, D.C. 20463,<br><br>      *Defendant*. | Civil Action No. _____<br><br>THREE-JUDGE COURT REQUESTED |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### INTRODUCTION

1. The Supreme Court has held that "independent expenditures" made in connection with a federal election—such as funds spent on advertisements, mailings, billboards, websites, and the like—are pure speech at the heart of the First Amendment, entitled to maximum constitutional protection. Congress generally may not limit a person's or other entity's independent expenditures, because they do not create a risk of actual or apparent *quid pro quo* corruption.

2.     Building on these precedents, this Court has held that a "non-connected" political committee (*i.e.*, a PAC, rather than a candidate or party committee) is constitutionally entitled to establish a special "independent expenditure"-only bank account, segregated from its main account, which may accept unlimited contributions to fund such pure expression concerning federal elections. Because independent expenditures do not give rise to the threat of *quid pro quo* corruption, this Court reasoned, contributions made for the sole purpose of subsidizing such non-corrupting speech may not be limited. As its name implies, an "independent expenditure"-only account must be used exclusively for funding independent expenditures. Any political contributions or coordinated expenditures the PAC wishes to make must come from its main account, which remains subject to the usual federal restrictions.

3.     The Supreme Court has already held that a political party, just like any other group, not only is capable of making expenditures regarding federal elections that are truly independent from the candidates it nominates, but is entitled to do so without limit. Thus, a political party committee should have the same fundamental constitutional right as a PAC to establish a separate, segregated "independent expenditure"-only account, which may accept unlimited contributions, for the sole purpose of funding its pure, independent speech about federal candidates, elections, and other political issues. The Bipartisan Campaign Reform Act is unconstitutional as applied, insofar as it prohibits political party committees from doing so. *See* 2 U.S.C. § 441a(a)(1)(B), (a)(1)(D); *id.* § 441i(a)-(c).

### JURISDICTION AND VENUE

4.     This Court has jurisdiction over this case under 28 U.S.C. § 1331, because Plaintiffs' claims arise under the First Amendment, and 28 U.S.C. § 2201-02, because Plaintiffs seek a declaratory judgment.

2

5.     This Court is the proper venue for this action under the Bipartisan Campaign Reform Act ("BCRA"), Pub. L. No. 107-155, § 403(a)(1), 116 Stat. 81, 113 (Mar. 27, 2002), because it is a constitutional challenge to various provisions of, and amendments made by, BCRA.  Venue is also proper in this Court under 28 U.S.C. § 1391(e)(1)-(2), because the defendant is a federal agency that "resides" in this district, and a substantial amount of the events and omissions giving rise to Plaintiffs' claims occurred here.

6.     Pursuant to BCRA § 403(a)(1) and 28 U.S.C. § 2284(a), this case must be heard by a three-judge panel of this Court.

## PARTIES

7.     Plaintiff LIBERTARIAN PARTY OF INDIANA ("LPIN") is a qualified state political party committee registered with the Federal Election Commission ("FEC").  Its principal place of business is in Indianapolis, Indiana.

8.     Plaintiff LIBERTARIAN NATIONAL CONGRESSIONAL COMMITTEE INC. ("LNCC") is a national political party committee registered with the FEC.  Its principal place of business is in Oxnard, California.

9.     Plaintiff CHRIS RUFER has contributed the maximum legal amount to the LPIN and LNCC.  He resides in Woodland, California.

10.     Defendant FEDERAL ELECTION COMMISSION ("FEC") is an independent federal agency charged with enforcing federal campaign finance laws, including BCRA.  Its principal place of business is in Washington, D.C.

## THE CHALLENGED STATUTES

11.     2 U.S.C. § 441a(a)(1)(B) limits the amount a person may contribute each year to a national political party committee; as adjusted for inflation, that limit is currently $32,400.  *See*

FEC, *Price Index Adjustments for Contribution and Expenditure Limitations and Lobbyist Bundling Disclosure Threshold*, 78 FED. REG. 8,530, 8,532 (Feb. 6, 2013).

12.     2 U.S.C. § 441a(a)(1)(D) similarly provides that a person may contribute a total of $10,000 each year to a state or local political party committee.

13.     Sections 441a(a)(1)(B) and (D) will be referred to collectively as the "BCRA Contribution Limits."

14.     2 U.S.C. § 441i(a) prohibits a national political party committee and its officers and agents from soliciting or receiving contributions that are not subject to BCRA's contribution limits, or spending funds not raised in compliance with such limits.

15.     2 U.S.C. § 441i(b)(1) provides that a state or local political party committee and its officers and agents generally may not spend or disburse money in connection with a federal election, unless that money was raised in compliance with BCRA's contribution limits.

16.     2 U.S.C. § 441i(c) further provides that a state or local political party committee and its officers and agents generally may not spend or disburse money, in whole or in part, for the purpose of raising funds to be used in connection with a federal election, unless that money was raised in compliance with BCRA's contribution limits.

17.     2 U.S.C. § 441i(a)-(c) will be collectively referred to as the "BCRA Compliance Requirements."

## THE FIRST AMENDMENT AND
## INDEPENDENT EXPENDITURES GENERALLY

18.     An "independent expenditure" is a political communication relating to a federal candidate or election that a person or entity makes on its own, without coordinating in any way with a federal candidate. The right to make independent expenditures lies at the core of the First Amendment, and is entitled to maximum constitutional protection.

19.     The First Amendment generally prohibits the Government from limiting the amount of independent expenditures that an individual, political committee, domestic corporation, or political party may make. Restrictions on a person's or entity's independent expenditures neither further the Government's legitimate interests in preventing *quid pro quo* corruption or the appearance of such corruption, nor prevent circumvention of other campaign finance limits. *See generally Buckley v. Valeo*, 424 U.S. 1, 39 (1976).

20.     The Supreme Court has held that preventing actual or apparent *quid pro quo* corruption, or the circumvention of other contribution limits, are the only constitutionally permissible grounds on which Congress may seek to limit political contributions. *Citizens United v. FEC*, 558 U.S. 310, 359 (2010).

21.     When discussing the fundamental right of people and entities to engage in political communications, courts generally employ the phrase "independent expenditure" expansively, as referring to any political expression that is not made in coordination with a federal candidate. The Government may not limit independent expenditures on the grounds that they benefit a candidate, a candidate may be grateful that a person or entity makes them, or even because the expenditures may influence a candidate, because such considerations do not constitute actual or apparent *quid pro quo* corruption.

22.     The absence of "prearrangement and coordination" between a candidate and the person or entity that makes an independent expenditure both undermines the value of that expenditure to the candidate and alleviates the danger that the expenditure will be made as part of an improper *quid pro quo* agreement with the candidate. *FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 497-98 (1985).

## THE FIRST AMENDMENT RIGHTS
## OF NON-PARTY POLITICAL ACTION COMMITTEES

23. Because independent expenditures do not give rise to actual or apparent corruption, contributions to a PAC for the sole purpose of subsidizing that committee's independent expenditures do not give rise to actual or apparent corruption, either, and may not be limited.

24. In *SpeechNow.org v. FEC*, 599 F.3d 686, 689 (D.C. Cir. 2010) (en banc), the D.C. Circuit, sitting *en banc*, held that BCRA's contribution limits are unconstitutional as applied to contributions to a PAC that solely engages in independent expenditures.

25. In *Carey v. FEC*, 791 F. Supp. 2d 121 (D.D.C. 2011), this Court—relying on *SpeechNow*—held that PACs which make contributions or coordinated expenditures have the fundamental constitutional right to establish separate, segregated "independent expenditure"-only ("IE-only") accounts. Such segregated accounts may accept unlimited contributions, but generally are subject to standard FEC reporting requirements, and may be used only for funding independent expenditures. Funds in an IE-only account may not be used, directly or indirectly, to subsidize contributions or coordinated expenditures, and may not be transferred into other accounts or otherwise be commingled with other funds.

26. *Carey* held that, as long as a PAC "strictly segregate[s] these funds and maintain[s] the statutory limits on soliciting and spending hard money, [it is] free to seek and expend unlimited . . . funds geared toward independent expenditures." 791 F. Supp. 2d at 135.

27. In *Emily's List v. FEC*, 581 F.3d 1 (D.C. Cir. 2009), the D.C. Circuit similarly held that PACs that contribute to candidates or make coordinated expenditures have the First Amendment right to establish a segregated fund for other purposes. Such segregated funds may

accept unlimited contributions, as long as they are not directly or indirectly used to subsidize contributions or coordinated expenditures.

28.     Thus, under current law, PACs have the right to maintain two separate accounts with regard to federal elections:

      a.     a traditional "hard money" account, which is subject to BCRA's contribution limits, and from which they may make contributions to candidates and coordinated expenditures; and

      b.     an "IE-only" account, which may accept unlimited contributions, but may be used solely for engaging in independent expenditures, which constitute "pure speech" that the Government may not seek to limit, and that do not give rise to actual or apparent corruption.

## POLITICAL PARTIES AND
## "INDEPENDENT EXPENDITURE"-ONLY ACCOUNTS

29.     Because political party committees in general, and minor party committees in particular, have the same First Amendment right to engage in independent expenditures as PACs, they should also have the same right to establish segregated IE-only accounts for the sole purpose of funding such independent expenditures. And, like PACs, they should be permitted to accept unlimited contributions for such IE-only accounts.

30.     A party would be required to ensure, however, that its IE-only account is kept carefully segregated from its traditional "hard money" account, from which it may make contributions and coordinated expenditures. Its IE-only account may not be used to directly or indirectly subsidize any contributions or coordinated expenditures.

31.     In *Colorado Republican Federal Campaign Committee v. FEC*, 518 U.S. 604 (1996) ("*Colorado I*"), the Supreme Court held that political party committees, no less than PACs, are able to engage in independent expenditures. The Court refused to assume that a

party's expenditures are automatically "coordinated" with its candidates, or that a party and its candidates are "identical."

32.    The *Colorado I* Court also held that a political party has the same fundamental First Amendment right to make unlimited independent expenditures as an individual or PAC. It concluded that no "special dangers of corruption associated with political parties . . . tip the constitutional balance" concerning their right to make unlimited independent expenditures "in a different direction." *Colorado I*, 518 U.S. at 616.

33.    The "absence of prearrangement and coordination" between a political party and its candidates concerning the party's independent expenditures:

a.    limits the utility of such expenditures to candidates, who have no input into their content, timing, or placement;

b.    prevents such expenditures from being part of corrupt *quid pro quo* arrangements, which is the only type of "corruption" the Government may constitutionally seek to limit; and

c.    precludes the Government from seeking to limit the amount of such independent expenditures in which the party engages. *Colorado I*, 518 U.S. at 615-17.

34.    *Colorado I* further concluded that political parties' independent expenditures create no risk of allowing people to circumvent limits on contributions to candidates, because contributors who would wish to exceed such limits by subsidizing a political party's independent expenditures could instead just make the independent expenditures themselves. 518 U.S. at 617.

35.    Because independent expenditures by political party committees are constitutionally innocuous, the Government lacks a valid interest in limiting either the amount of

8

such expenditures a political party committee makes, or the amount of contributions a political party committee receives for the sole purpose of engaging in such expenditures.

36.     BCRA's absolute bar against political parties establishing segregated IE-only accounts that may accept unlimited contributions is not a closely tailored means of preventing actual or apparent *quid pro quo* corruption:

a.     Because political parties and their candidates have a "close relationship," a candidate might be grateful if a contribution is made to her political party's IE-only account. In *McCutcheon v. FEC*, 134 S. Ct. 1434 (2014), however, the Supreme Court reaffirmed that such a transaction is not corrupting, and the Government may not seek to prohibit it, simply because a candidate might be grateful for it.

b.     Likewise, a person who makes a large contribution to a political party's IE-only account might be regarded as influential within the party, and may have easier access to federal officeholders. Again, *McCutcheon* reaffirmed that merely having political influence does not constitute corruption, and is not a legitimate grounds for restricting contributions. Indeed, *Citizens United v. FEC*, 559 U.S. 310, 359 (2010), expressly held that "[i]ngratiation and access . . . are not corruption."

c.     A contribution to a political party's IE-only account cannot be deemed to be the constitutional equivalent of a contribution to a candidate's own campaign account, because—by definition—a candidate cannot directly or indirectly influence the manner in which a party chooses to spend IE-only funds. If the party did spend money at the suggestion of a candidate, the transaction would be a coordinated expenditure, rather than an independent expenditure.

d.     In any event, even if major political parties cannot be trusted to establish IE-only accounts based on their histories of fundraising activities, there is no basis other than pure speculation for prohibiting "minor" or "third party" political committees, such as LNCC and LPIN, from doing so.

37.     Preventing political parties from establishing IE-only accounts, and limiting contributions to such accounts, are not reasonably tailored means of preventing circumvention of other contribution limits.  The Government can prevent circumvention without unnecessarily trammeling the right or ability of political parties to engage in independent expenditures by prohibiting political parties from: (i) commingling IE-only funds with other money; (ii) transferring IE-only funds to other accounts; and (iii) spending IE-only funds on contributions or coordinated expenditures.  As long as the party does not transfer IE-only funds to candidates or coordinate with candidates in spending IE-only funds, allowing unlimited contributions to a party's IE-only account will not enable contributors to skirt otherwise valid contribution limits.

## THE LNCC'S INTENDED IE-ONLY ACCOUNT

38.     The LNCC is the Libertarian Party's national congressional campaign party committee.  Among other things, it supports Libertarian candidates in races for the U.S. House of Representatives.

39.     In 2012, dozens of Libertarian candidates ran for the U.S. House of Representatives and Senate across the country.

40.     Over 50 Libertarian candidates presently are running for Congress in districts throughout the nation in 2014.

41.    The LNCC wishes to establish a separate, segregated account that would be used solely for making independent expenditures, including independent expenditures in connection with federal candidates and races in the 2014 and 2016 elections.  The LNCC further wishes to exercise its First Amendment right to accept unlimited contributions to this IE-only account.

42.    The LNCC intends to institute a range of protections to preserve the integrity of its IE-only account.  The LNCC will ensure that:

      a.    the IE-only account is kept entirely segregated from its traditional "hard money" account;

      b.    no contributions or coordinated expenditures are made from the IE-only account;

      c.    no funds are transferred from the IE-only account to any other accounts;

      d.    federal candidates or officeholders do not solicit funds for, or direct funds to, the IE-only account, and are not informed about any contributors or contributions made to the IE-only account; and

      e.    the process by which the LNCC makes independent expenditures from its IE-only account is entirely isolated from, and involve different personnel than, the process by which the party makes decisions concerning contributions or coordinated expenditures.

43.    The LNCC intends to create a special IE-only committee to oversee the IE-only account.

44.    The LNCC's Chair, Mark W. Rutherford, will appoint a member of the Libertarian Party as chair of the IE-only committee for a fixed two-year term.  The chair of the IE-only committee shall be removable only for cause upon a 3/4 vote of the LNCC's Executive Committee.

45.   Rutherford intends to appoint Scott Lieberman as chair of the IE-only committee. Lieberman may appoint other members of the Libertarian Party to the IE-only committee as needed.

46.   This IE-only committee will be solely responsible for developing, approving, and placing all advertisements and other political communications to be paid for from the IE-only account. No other LNCC party personnel will be involved at any stage in the process.

47.   No member of the IE-only committee, including the chair, may:

a.   be a federal candidate or officeholder;

b.   play any role in fundraising for the LNCC's "hard money" account;

c.   make decisions concerning contributions or coordinated expenditures to be made from the LNCC's "hard money" account;

d.   coordinate in any way with any federal candidates or their campaigns concerning any expenditures from the IE-only account; or

e.   coordinate in any way with party leadership or any party members responsible for making decisions concerning the party's "hard money" account.

48.   The IE-only committee will not engage in any "tallying" or similar activities. Aside from statutorily required FEC filings, it will not notify any party officials, candidates, or campaigns about the identities of its contributors, the amount of any contributions, or the timing or frequency of a person's contributions.

49.   Federal candidates and officeholders will not solicit funds for, or direct funds to, the IE-only account. The account will not accept funds solicited by federal candidates or

officeholders; participate in fundraisers sponsored by them, or at which they are special publicized guests; or participate in joint fundraising committees with them.

50.     The IE-only account will further insulate itself by refusing to accept contributions from any person who asks or suggests that the contributed funds be "earmarked" in any way, "credited" to a particular candidate, or otherwise spent for the benefit of any particular candidate.

51.     The LNCC is willing to establish any other reasonable prophylactic safeguards that this Court determines are necessary to allow it to maintain an IE-only account that accepts unlimited contributions.

## THE LPIN'S INTENDED IE-ONLY ACCOUNT

52.     The Libertarian Party of Indiana is Indiana's third-largest political party.

53.     The LPIN believes, among other things, that each person has certain unalienable natural rights, such as the rights to life, liberty, justly acquired property, and self-governance.

54.     There are currently three elected Libertarian officials in the State of Indiana: Susan Bell, Town Judge of Hagerstown; Cheryl Heacox, Clay Township Advisory Board; and Steve Coffman, Liberty Township Advisory Board.

55.     Libertarian candidates have run in the State of Indiana for numerous federal offices, including:

a.     2012—President and Vice President (Gary Johnson and Jim Gray); U.S. Senate (Andrew Horning); and U.S. House of Representatives from five congressional districts;

b.     2010—U.S. Senate (Rebecca Sink-Burris) and U.S. House of Representatives from all nine congressional districts in the state. Senate candidate Rebecca Sink-Burris received 91,943 votes (5.33%) statewide, while congressional candidate Chard Reid received 18,203 votes (7.74%) from his district.

13

56.     Several Libertarian candidates will be running for federal office in Indiana in the 2014 election cycle.

57.     The LPIN is registered with the FEC as a qualified state political party. *See* A.O. 2007-06.

58.     The LPIN wishes to establish a separate, segregated account that would be used solely for making independent expenditures, including independent expenditures in connection with federal candidates and elections. The LPIN wishes to exercise its First Amendment right to accept unlimited contributions to this IE-only account.

59.     The LPIN intends to institute a range of protections to preserve the integrity of its IE-only account. The LPIN will ensure that:

    a.      the IE-only account is kept entirely segregated from its traditional "hard money" account;

    b.      no contributions or coordinated expenditures are made from the IE-only account;

    c.      no funds are transferred from the IE-only account to any other accounts;

    d.      federal candidates or officeholders do not solicit funds for, or direct funds to, the IE-only account, and are not informed about any contributors or contributions made to the IE-only account; and

    e.      the process by which the LPIN makes independent expenditures from its IE-only account will be entirely isolated from, and involve different personnel than, the process by which the party makes decisions concerning contributions or coordinated expenditures.

60.     The LPIN intends to create a special IE-only committee to oversee the IE-only account.

61.     The LPIN's State Chair, Daniel Drexler, will appoint a member of the LPIN as chair of the IE-only committee for a fixed two-year term. The chair of the IE-only committee shall be removable only for cause upon a 3/4 vote of the LPIN's Executive Committee.

62.     Drexler intends to appoint Brad Klopfenstein as chair of the IE-only committee. Klopfenstein may appoint other members of the LPIN to the IE-only committee as needed.

63.     This IE-only committee will be solely responsible for developing, approving, and placing all advertisements and other political communications to be paid for from the IE-only account. No other LPIN party personnel will be involved at any stage in the process.

64.     No member of the IE-only committee, including the chair, may:

     a.     be a federal candidate or officeholder;

     b.     play any role in fundraising for the LPIN's "hard money" account;

     c.     make decisions concerning contributions or coordinated expenditures to be made from the LPIN's "hard money" account;

     d.     coordinate in any way with any federal candidates or their campaigns concerning any expenditures from the IE-only account; or

     e.     coordinate in any way with party leadership or any party members responsible for making decisions concerning the party's "hard money" account.

65.     The IE-only committee will not engage in any "tallying" or similar activities. Aside from statutorily required FEC filings, it will not notify any party officials, candidates, or campaigns about the identities of its contributors, the amount of any contributions, or the timing or frequency of a person's contributions.

66.     Federal candidates and officeholders will not solicit funds for, or direct funds to, the IE-only account. The account will not accept funds solicited by federal candidates or

officeholders; participate in fundraisers sponsored by them, or at which they are special publicized guests; or participate in joint fundraising committees with them.

67.     The IE-only account will further insulate itself by refusing to accept contributions from any person who asks or suggests that the contributed funds be "earmarked" in any way, "credited" to a particular candidate, or otherwise spent for the benefit of any particular candidate.

68.     The LPIN is willing to establish any other reasonable prophylactic safeguards that this Court determines are necessary to allow it to maintain an IE-only account that accepts unlimited contributions.

## BCRA UNCONSTITUTIONALLY RESTRICTS THE LNCC'S ABILITY TO ENGAGE IN POLITICAL SPEECH

69.     Under current law, an individual may contribute no more than $32,400 annually to a national political party committee. 2 U.S.C. § 441a(a)(1)(B); 78 FED. REG. 8,530, 8,532.

70.     Plaintiff Chris Rufer has contributed the maximum permissible amount of $32,400 to the LNCC this year.

71.     Rufer supports many of the LNCC's ideological positions, seeks to draw greater public attention to the cause of personal freedom, and wishes to promote the cause of smaller government. He wishes to immediately contribute additional funds to the LNCC to subsidize its independent expenditures concerning federal elections, candidates, and campaigns.

72.     The LNCC has accepted Rufer's $32,400 contribution, and wishes to accept additional funds from Rufer this year to subsidize its independent expenditures concerning federal elections, candidates, and campaigns, specifically including independent expenditures it will make concerning the upcoming 2014 and 2016 federal elections.

73. BCRA's Contribution Limits bar the LNCC from accepting unlimited contributions for an IE-only account. 2 U.S.C. § 441a(a)(1)(B), as adjusted for inflation, prohibits the LPIN from accepting more than $32,400 annually from Rufer. No exceptions exist for contributions made to an IE-only account.

74. The BCRA Compliance Requirements, 2 U.S.C. § 441i(a), also prevent the LNCC from establishing an IE-only account for use in connection with federal elections that accepts unlimited contributions. 2 U.S.C. § 441i(a) provides that a national party and its officers or agents may not solicit or receive any contributions that are not subject to BCRA's contribution limits, or spend money that was not raised in compliance with those limits.

75. But for these statutory restrictions, and the reasonable fear of FEC enforcement proceedings and criminal prosecution, the LNCC would have established an IE-only account, subject to the restrictions and preventive measures discussed above, and accepted unlimited contributions to it. If these restrictions are invalidated, the LNCC will establish an IE-only account in the manner described above.

76. But for these statutory restrictions and the reasonable fear of FEC enforcement proceedings and criminal prosecution, Rufer would have contributed additional funds, beyond the statutory maximum, to the LNCC's IE-only account. If these limits are invalidated, Rufer will contribute funds to the LNCC's IE-only account in excess of federal contribution limits.

## BCRA UNCONSTITUTIONALLY RESTRICTS THE LPIN'S ABILITY TO ENGAGE IN POLITICAL SPEECH

77. Under current law, 2 U.S.C. § 441a(a)(1)(D), an individual is permitted to contribute no more than $10,000 annually to a state political party committee.

78. Plaintiff Chris Rufer has contributed the maximum permissible amount of $10,000 to the LPIN this year.

79.     Rufer supports many of the LPIN's ideological positions, seeks to draw greater public attention to the cause of personal freedom, and wishes to promote the cause of smaller government.  He wishes to immediately contribute additional funds to the LPIN to subsidize its independent expenditures concerning federal elections, candidates, and campaigns.

80.     The LPIN has accepted Rufer's $10,000 contribution, and wishes to accept additional funds from Rufer this year to subsidize its independent expenditures concerning federal elections, candidates, and campaigns, specifically including independent expenditures it will make concerning the upcoming 2014 and 2016 federal elections.

81.     BCRA's Contribution Limits, 2 U.S.C. § 441a(a)(1)(D), prohibit the LPIN from accepting more than $10,000 annually from Rufer.  No exceptions exist for contributions made to an IE-only account.

82.     The BCRA Compliance Requirements, 2 U.S.C. § 441i(b)-(c), also prevent the LPIN from establishing an IE-only account for use in connection with federal elections that accepts unlimited contributions.  2 U.S.C. § 441i(b)(1) provides that all money that a state or local party spends in connection with a federal election must have been raised in compliance with BCRA's contribution limits.

83.     2 U.S.C § 441i(c) further prohibits the LPIN from using money from an IE-only account that accepts unlimited contributions to subsidize that IE-only account's fundraising costs.

84.     But for these statutory restrictions, and the reasonable fear of FEC enforcement proceedings and criminal prosecution, the LPIN would have established an IE-only account, subject to the restrictions and preventive measures discussed above, and accepted unlimited contributions to it.

85.     But for these statutory restrictions and the reasonable fear of FEC enforcement proceedings and criminal prosecution, Rufer would have contributed additional funds, beyond the statutory maximum, to the LPIN's IE-only account.

## CAUSES OF ACTION

### COUNT I
### FIRST AMENDMENT CHALLENGE TO BCRA CONTRIBUTION LIMITS (2 U.S.C. § 441a(a)(1)(B) and (D)), AS APPLIED TO "INDEPENDENT EXPENDITURE"-ONLY ACCOUNTS OF ALL POLITICAL PARTIES

86.     Plaintiffs hereby incorporate by reference and re-allege the allegations in the preceding paragraphs.

87.     2 U.S.C. § 441a(a)(1)(B) limits the amount of contributions a national political party committee may receive from an individual.

88.     2 U.S.C. § 441a(a)(1)(D) limits the amount of contributions a state political party committee may receive from an individual.

89.     These limits violate the First Amendment as applied to contributions to a special, segregated IE-only account established by a national or state political party committee where:

        a.      funds from the IE-only account are not used for political contributions or coordinated expenditures;

        b.      funds from the IE-only account are not transferred to any "hard money" accounts, from which contributions or coordinated expenditures are made;

        c.      the party personnel responsible for overseeing, designing communications to be funded by, and making any decisions concerning the IE-only account are entirely different from, and do not coordinate with, the party personnel responsible for making decisions concerning contributions and independent expenditures from the party's "hard money" account; and

        d.      the party personnel responsible for overseeing the IE-only account are not federal candidates or officeholders, and do not coordinate with federal candidates, their campaigns, or their agents.

90.     As further prophylactic measures, the party committee's IE-only account:

    a.     would not engage in fundraising with federal candidates or officeholders, such as by accepting funds solicited by them, having them appear at fundraising events for the IE-only account, or participating in joint fundraising committees with them;

    b.     would reject contributions from any person who asks or suggests that the contributed funds be "earmarked" in any way, "credited" to a particular candidate, or otherwise spent for the benefit of any particular candidate or be dedicated to any particular races; and

    c.     would not engage in "tallying" or similar activities, or notify party officials, candidates, or campaigns about the identities of its contributors, the amount of any contributions, or the timing or frequency of a person's contributions.

91.     Contributions to a national or state political party committee's IE-only account do not create a risk of actual or apparent *quid pro quo* corruption.

92.     Prohibiting a national or state political party committee from establishing an IE-only account to which BCRA's contribution limits are inapplicable is an impermissibly overbroad means of achieving any sufficiently important interests the Government may have.

93.     Thus, 2 U.S.C. § 441a(a)(1)(B) and (D) violate the First Amendment as applied to a national or state political party committee's IE-only account.   These provisions unconstitutionally abridge the right of contributors to provide funds in excess of BCRA's contribution limits to political party committees' IE-only accounts, as well as the right of political party committees to receive them.

## COUNT II
### FIRST AMENDMENT CHALLENGE TO BCRA CONTRIBUTION LIMITS (2 U.S.C. § 441a(a)(1)(B) and (D)), AS APPLIED TO "INDEPENDENT EXPENDITURE"-ONLY ACCOUNTS OF "MINOR" POLITICAL PARTIES

94.     Plaintiffs hereby incorporate by reference and re-allege the allegations in the preceding paragraphs.

95.     Even if 2 U.S.C. § 441a(a)(1)(B) and (D)'s contribution limits constitutionally may be applied to prohibit national and state committees of the two "major" parties from establishing IE-only accounts that may accept unlimited contributions, those limits are unconstitutional as applied to IE-only accounts of "minor" or "third" party committees.

96.     Minor and third parties lack the history of allegedly "selling . . . access" to federal candidates and officeholders, giving rise to an appearance of corruption, that the *McConnell* Court chronicled for major parties.

97.     Minor and third parties generally lack powerful or influential officials or candidates to whom access may be "sold," and therefore categorically are much more akin to PACs, which may establish IE-only accounts in addition to their "hard money" accounts, than to the major parties.

98.     Moreover, minor and third parties generally coalesce around particular ideologies with definite and consistent positions on public issues.  There is no evidence that people make large contributions to minor or third political parties to induce those parties, their candidates, or their officeholders to change their minds on particular issues or adopt certain public policy positions.  The history of people attempting to "purchase . . . influence" that the *McConnell* Court concluded exists with regard to the major parties is absent with regard to third parties.

99.     Applying 2 U.S.C. § 441a(a)(1)(B) and (D)'s contribution limits to prohibit national or state political party committees of minor or third parties from establishing segregated

22

IE-only accounts is a constitutionally impermissible prophylactic-upon-prophylactic that responds to speculative, theoretical risks.

100.    Contributions to a minor or third party committee's IE-only account would not create a risk of actual or apparent *quid pro quo* corruption.

101.    Prohibiting a minor or third party committee from establishing an IE-only account that is not subject to BCRA's contribution limits is an impermissibly overbroad means of achieving any sufficiently important interests the Government may have.

102.    Thus, 2 U.S.C. § 441a(a)(1)(B) and (D) violate the First Amendment as applied to an IE-only account established by a national or state political party committee of a minor or third party. These provisions unconstitutionally abridge the right of contributors to provide funds in excess of BCRA's contribution limits to the IE-only accounts of minor or third political parties, as well as the right of such party committees to receive them.

## COUNT III
## FIRST AMENDMENT CHALLENGE TO THE FUNDING SOURCE RESTRICTIONS (2 U.S.C. § 441i(a)-(c)), AS APPLIED TO "INDEPENDENT EXPENDITURE"- ONLY ACCOUNTS OF ALL POLITICAL PARTIES

103.    Plaintiffs hereby incorporate by reference and re-allege the allegations in the preceding paragraphs.

104.    2 U.S.C. § 441i(a) provides that a national political party committee may not solicit or receive funds in excess of BCRA's contribution limits, or spend funds that were not raised in compliance with those limits.

105.    2 U.S.C. § 441i(b)(1) provides that a state or local political party committee and its officers and agents generally may not spend or disburse money in connection with a federal election, unless that money was raised in compliance with BCRA's contribution limits.

106.    2 U.S.C. § 441i(c) provides that a state or local political party committee and its officers and agents generally may not spend or disburse money, in whole or in part, for the purpose of raising funds to be used in connection with a federal election, unless that money was raised in compliance with BCRA's contribution limits.

107.    These provisions violate the First Amendment as applied to funds contributed to, or spent from, a national or state political party committee's segregated IE-only account that is not subject to BCRA's contribution limits, as described earlier in this Complaint.   These restrictions effectively prohibit a national party committee from accepting any contributions into, or spending any funds from, such an account.  2 U.S.C. § 441i(a)(1).  They also bar a state party committee from spending any money contributed to such an IE-only account, either in general, *see id.* § 441i(b)(1), or to raise additional funds for that account, *see id.* § 441i(c).

108.    A national or state political party committee's independent expenditures do not create a risk of actual or apparent corruption and may not be limited.  Contributions to a political party committee's IE-only account for the sole purpose of funding such independent expenditures similarly are constitutionally innocuous and not subject to limits.   Thus, the Government lacks any valid interest in prohibiting a political party committee from accepting or spending such funds.

109.    Truly independent expenditures from a political party committee's IE-only account, even if that account is not subject to BCRA's contribution limits, do not create a risk of actual or apparent *quid pro quo* corruption.

110.    Barring a political party committee from accepting money for, or spending money from, an IE-only account that is not subject to BCRA's contribution limits is an impermissibly overbroad means of pursuing any sufficiently important interests the Government may have.

24

111.    Thus, 2 U.S.C. § 441i(a) violates the First Amendment as applied to a national political party committee's IE-only account, and 2 U.S.C. § 441(b)-(c) violates the First Amendment as applied to a state political party committee's IE-only account. These provisions unconstitutionally abridge the right of contributors to provide funds in excess of BCRA's contribution limits to political party committees' IE-only accounts, as well as the right of political party committees to receive and spend them.

### COUNT IV
### FIRST AMENDMENT CHALLENGE TO THE FUNDING SOURCE RESTRICTIONS (2 U.S.C. § 441i(a)-(c)), AS APPLIED TO "INDEPENDENT EXPENDITURE"-ONLY ACCOUNTS OF "MINOR" POLITICAL PARTIES

112.    Plaintiffs hereby incorporate by reference and re-allege the allegations in the preceding paragraphs.

113.    Even if 2 U.S.C. § 441i(a)-(c) may be applied constitutionally to prohibit the two "major" parties from accepting money for, or spending money from, IE-only accounts that are not subject to BCRA's contribution limits, those prohibitions are unconstitutional as applied to IE-only accounts established by "minor" or "third" parties.

114.    Minor and third parties lack the history of allegedly "selling . . . access" to federal candidates and officeholders, giving rise to an appearance of corruption, that the *McConnell* Court chronicled for major parties.

115.    Minor and third parties generally lack powerful or influential officials or candidates to whom access could be "sold," and therefore categorically are much more akin to PACs, which may establish IE-only accounts in addition to their "hard money" accounts, than to the major parties.

116. Moreover, minor and third parties generally coalesce around particular ideologies with definite and consistent positions on public issues. There is no evidence that people make large contributions to minor or third political parties to induce those parties, their candidates, or their officeholders to change their minds on particular issues or adopt certain public policy positions. The history of people attempting to "purchase . . . influence" that the *McConnell* Court concluded exists with regard to the major parties is absent with regard to third parties.

117. Applying 2 U.S.C. § 441i(a)-(c)'s restrictions to prohibit minor or third parties from establishing or using segregated IE-only accounts that are not subject to BCRA's contribution limits is a constitutionally impermissible prophylactic-upon-prophylactic that responds to speculative, theoretical risks.

118. Independent expenditures by the national or state political party committee of a minor or third party do not create a risk of actual or apparent *quid pro quo* corruption and may not be limited. Contributions to the IE-only account of such a minor or third party made for the sole purpose of funding independent expenditures similarly are constitutionally innocuous and not subject to limits. Thus, the Government lacks any valid interest in prohibiting a minor or third political party committee from accepting or spending such funds.

119. Truly independent expenditures from a minor or third party committee's IE-only account, even if that account is not subject to BCRA's contribution limits, do not create a risk of actual or apparent *quid pro quo* corruption.

120. Prohibiting a minor or third party committee from establishing an IE-only account that is not subject to BCRA's contribution limits is an impermissibly overbroad means of achieving any sufficiently important interests the Government may have.

121.   Thus, 2 U.S.C. § 441i(a) violates the First Amendment as applied to IE-only accounts established by the national political party committees of minor or third parties, and 2 U.S.C. § 441i(b)-(c) violates the First Amendment as applied to IE-only accounts established by the state political party committees of minor or third parties.  These provisions unconstitutionally abridge the right of contributors to provide funds in excess of BCRA's contribution limits to a minor or third party's IE-only account, as well as the right of such a party committee to receive them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.   Convening of a three-judge Court to consider this case, pursuant to BCRA, § 403(a)(1);

2.   Advancement of this case on the Court's docket and expedited consideration, to the greatest extent possible, pursuant to BCRA, § 403(a)(4);

3.   Preliminary and permanent injunctions prohibiting the FEC from applying 2 U.S.C. § 441a(a)(1)(B), (D), or § 441i(a)-(c), or any regulations implementing those statutes, to "independent expenditure"-only committees created either by:

      a.   any qualified political party committee; or

      b.   any qualified political party committee established by a non-major, "third" party such as the Libertarians;

4.   A declaratory judgment holding that 2 U.S.C. § 441a(a)(1)(B), (D), or § 441i(a)-(c), as well as any regulations implementing those provisions, are unconstitutional under the First Amendment as applied to "independent expenditure"-only committees created either by:

      a.   any qualified political party committee; or

b.     any qualified political party committee established by a non-major, "third"

party such as the Libertarians;

5.     Costs and attorneys fees pursuant to any applicable statute or other authority; and

6.     Such other relief as this Court deems just and equitable.

Respectfully submitted,

*Michael T Morley*

Michael T. Morley, DC Bar #492716
COOLIDGE-REAGAN FOUNDATION
1629 K Street, Suite 300
Washington, DC  20006
Phone:   (860) 778-3883
Fax:      (202) 331-3759
Michael@coolidgereagan.org

Danielle Frisa*
SHAHLA PC
708 Main Street, Suite 430
Houston, TX  77002
Phone:  (713) 497-5133
Fax:      (713) 904-2496
Danielle@shahlapc.com
*Motion for admission *pro hac vice*
Forthcoming

*Counsel for Plaintiffs Chris Rufer,*
*Libertarian Party of Indiana, and*
*Libertarian National Congressional*
*Committee Inc.*

## CERTIFICATE OF SERVICE

I, Michael T. Morley, hereby certify that on this 2$1^{th}$ day of May, 2014, I did cause a true and complete copy of Plaintiffs' Verified Compliant for Injunctive and Declaratory Relief to be served via personal delivery and first-class mail, postage prepaid, upon:

> Federal Election Commission
> 999 E Street, N.W.
> Washington, D.C. 20463
> *Defendant*

Michael T. Morley, DC Bar #492716
COOLIDGE-REAGAN FOUNDATION
1629 K Street, Suite 300
Washington, DC 20006
Phone:   (860) 778-3883
Fax:       (202) 331-3759

29